## UNITED STATES DISTRICT COURT
## FOR THE STATE OF COLORADO

**Case No.**

TERRI VELASQUEZ,

     Plaintiff,

vs.

CITY OF COLORADO SPRINGS, a Municipal Corporate Entity,
by and through the Board of County Commissioners,
its governing body, and STEVEN COX in his Individual Capacity,

     Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Terri Velasquez, by and through her attorneys at the law firm of Frank & Finger, P.C., allege and assert claims against the City of Colorado Springs, by and through its governing entity, the Board of County Commissioners, and Steven Cox in his individual capacity as follows:

### INTRODUCTION

1.     This is a federal civil rights lawsuit brought by the Plaintiff, Terri Velasquez, against the City of Colorado Springs, by and through its governing entity, the Board of County Commissioners, and Steven Cox in his individual capacity. This lawsuit asserts claims of gender discrimination, age discrimination, and other wrongs against these defendants. Presently pending before the EEOC is a charge of gender and retaliation discrimination, which cannot be asserted at this time because the administrative agency has not completed its investigation and issued a right-to-sue letter. It is the intention of the Plaintiff, upon receipt of a right-to-sue letter, to

amend this Complaint to bring claims pursuant to Title VII against the City of Colorado Springs.

2.     The Plaintiff, Terri Velasquez, in this legal matter asserts claims because of what she alleges to be a series of illegal employment practices, including a demotion, pay reduction, and then termination from employment, which events began in calendar year 2010 and continued into calendar year 2011.  The Plaintiff asserts in ths lawsuit that her demotion and termination was orchestrated and controlled by Defendant Steve Cox, who acted maliciously, wrongfully, and with improper gender animus directed against her.  Further, it is asserted that the actions taken against Ms. Velasquez were pursuant to directions or policies set forth by various city council members to rid itself of older employees which policy was made known in calendar year 2010 and reported to the City Attorney's Office in 2010 by Penelope Culbreth-Graft, the then City Manager.

3.     Pursuant to this policy of terminating or getting rid of older employees, particularly female employees, the City has shed itself of numerous well-qualified female employees over the age of 40 years who have had substantial experience and service with the City of Colorado Springs.  Other older employees are presently being threatened with loss of position or termination as part of this pattern and practice.

4.     Plaintiff also asserts in this matter that her termination was or may have been a mixed illegal motive termination because of Ms. Velasquez's unmasking or communications about illegal or other improper fiscal policies and practices within the City, including but not limited to potential improper handling of funds associated with the United States Olympic Committee and funds obtained from El Pomar Foundation.

5.     Further, Ms. Velasquez asserts that in addition to gender and age animus, animus

2

was directed against her by Mr. Cox because of her role in exposing an overpayment to

Defendant Mr. Cox of nearly $5,000, as well as other overpayments to firefighters.

6.      Plaintiff seeks to remediate the wrongs committed against her and seeks economic

compensation for her economic losses from the wrongful and improper job actions taken against

her and the resulting damage from such actions.

## JURISDICTION

7.      This Court has jurisdiction pursuant to 42 U.S.C. §1988; 28 U.S.C. §1331; 28

U.S.C. §1343; 29 U.S.C. § 623.

8.      More than a hundred days has elapsed since Ms. Velasquez has filed a charge of

discrimination asserting age discrimination.  Further, this court has supplemental jurisdiction

pursuant to 28 U.S.C. § 1367.  The State claims are based upon facts directly tied and intertwined

with the Federal claims.

9.      Plaintiff has pending before the EEOC a charge of gender discrimination and

retaliation.  Plaintiff has not received a right-to-sue letter relating to these claims and therefore

cannot make a claim under Title VII in this Complaint.  Plaintiff intends to file an amended

complaint once a right-to-sue letter is received relating to her Title VII claims.  The Title VII

claims are directly related to the claims made in this lawsuit.  This litigation is brought prior to

issuance of the right-to-sue letter because of a two year statute of limitation governing claims

under 42 U.S.C. §1983.

## PARTIES

10.     Terri Velasquez is a resident of Colorado Springs and is the former Chief Financial Officer for the City of Colorado Springs. Ms. Velasquez was appointed to her position in calendar year 2008 at the time Penelope Culbreth-Graft, a female, was City Manager. Prior to 2008, Ms Velasquez had served in multiple positions with the City of Colorado Springs, including accounting payroll manager and finance director.

11.     Ms. Velasquez is highly educated and trained in financial matters and holds certification as a CPA.

12.     The City of Colorado Springs is a Municipal Governmental entity. The City Council is the official governing body for the City of Colorado Springs. The City of Colorado Springs is a person for purposes of 42 U.S.C. §1983 liability. Further, the City of Colorado Springs is an employer under various federal acts, including the Age Discrimination Act and Title VII.

13.     Steven Cox is an employee of the City of Colorado Springs. During the relevant period of time, Mr. Cox held the position of Fire Chief, Interim City Manager and Chief of Staff. Mr. Cox is sued individually relating to his decisions and actions that he made and took in calendar years 2010 and 2011 relative to Terri Velasquez.

14.     All decisions of Mr. Cox were rubber stamped by the City Council, the mayor or other final decision makers. Mr. Cox was the delegated final decision maker concerning Ms. Velasquez's demotion, pay reduction, and termination. Mr. Cox is a person for purposes of 42 U.S.C. §1983.

15.     Mr. Cox acted with wrongful and improper animus or his actions were taken with

4

malice and wrongful intent or were taken with a reckless disregard of the law and the rights of Ms. Velasquez. All actions of Mr. Cox were taken under color of law, statute, rule, or regulation, and are alleged to be willful, wanton, or taken with a reckless disregard for rights. All actions of Mr. Cox were taken under color of law, a statute rule regulation and ordinance.

16.     The actions complained of herein were all part of a pattern and practice of gender and age discrimination that were taken by the Defendants, sanctioned by City officials, and which continue through the present time.

## FACTUAL ALLEGATIONS

17.     In calendar year 2010 or a time slightly before then, Colorado Springs City Council Members made it known that there was a desire to terminate and remove from employment older workers of the City. This information was communicated to the City Manager, Penelope Culbreth-Graft.

18.     Further, in March of 2010, Penelope Culbreth-Graft obtained information that gave the appearance that a male, Mr. Cox, was being favored for selection to replace her when she retired and that one or more qualified females were being overlooked.

19.     As a result of the information, City Manager Penelope Culbreth-Graft had conversations with the HR Director concerning the information and was told by the HR Director that the comments could expose the City to liability in future personnel matters.

20.     As a result of the apparent illegal personnel practices of the City, the City Manager informed the City Attorney of her concern relating to the practices, so that appropriate actions could be taken.

21.     On information and belief, no actions were taken by the City Attorney's Office or

the City to stem the illegal employment practices that had been articulated or demonstrated.

22.     Following this outcry by the City Manager, City Council selected Steve Cox, a white male, for the position of Interim City Manager.

23.     Mr. Cox, at the time of his appointment to Interim City Manager in approximately April 2010, also held the position of Fire Chief for the Fire Department of Colorado Springs. The fire department had a poor record of hiring and promoting females and Mr. Cox, at the time of his promotion, had been sued along with the fire department for illegal gender discriminatory employment practices by one or more females who worked in the fire department.

24.     Mr. Cox embraced a sexist attitude toward females stemming from his duties, responsibilities, and operation as Chief of the Fire Department.  Mr. Cox held views that females should be subservient and always agree with his decisions, whether right or wrong.

25.     Mr. Cox, from April 2010 forward, displayed his gender bias.

26.     Plaintiff, Terri Velasquez, at the time Mr. Cox assumed the position of Interim City Manager, was the Chief Financial Officer for the City of Colorado Springs.  Ms. Velasquez supervised various financial operations, including budget and various fiscal programs operated by the City.  Ms. Velasquez also was involved in supervising HR Operations.

27.     For calendar 2008 and 2009, Ms. Velasquez had been evaluated by the City Manager Penelope Culbreth-Graft with a rating of exceeding expectations in all categories for which she was rated, the highest rating possible.  The evaluation given to Ms. Velasquez indicated she was performing her job functions and duties in a highly efficient and proper manner.

28.     Prior evaluations given to Ms. Velasquez from male supervisors rated her as

6

exceeding expectations for calendar years 2005, 2006, and 2007.

29.     On July 9, 2010, Ms. Velasquez was demoted by Defendant Cox from her position as Chief Financial Officer to the position of Director of Finance and Administrative Services. The reduction in position ultimately caused Ms. Velasquez to suffer a wage reduction that became effective in January, 2011.

30.     The demotion of Ms. Velasquez that occurred on July 9, 2010, was done for no valid reason. Ms. Velasquez was performing her job in an excellent fashion. Her and her team's work on the City budget was recognized for an award which is memorialized in an August 2010 email.

31.     The demotion of Ms. Velasquez in November of 2010 followed shortly after Ms. Velasquez and her team had discovered and reported an overpayment to Mr. Cox of nearly $5,000 of benefits. The reporting included notifying certain city officials who were responsible for the City's fiscal integrity.

32.     Following Ms. Velasquez's demotion, Ms. Velasquez continued to perform her job duties and functions at a very high level, continued to function in a highly professional fashion, and had no negative action with Mr. Cox until November of 2010.

33.     In November of 2010, it was discovered by the pension administrator for the City that errors had occurred in the retirement program for the fire department. It was confirmed that the Acting City Administrator, Mr. Cox, had received an overpayment of approximately $5,000. Ms. Velasquez had this information communicated to Mr. Cox and as a result of the discovery, a full audit was ordered by Ms. Velasquez to review what other payments, if any, were made to fire department personnel. On November 23, 2010, an email was sent to Mr. Cox relating to the

7

audit being conducted. Certain recommendations were made by Ms. Velasquez concerning the fire department retirement program which recommendations were originally rejected by Mr. Cox.

34.     Following the advisement to Mr. Cox of the audit and discovery by Ms. Velasquez and her team, Mr. Cox became highly antagonistic. His antagonism included the direct attack on Ms. Velasquez for notifying the City Auditor, Mr. Nester, of the overpayment. Such notification was required by City procedures. In one or more meetings between Mr. Cox and Ms. Velasquez, Mr. Cox expressed his anger which appeared to be made directly at Ms. Velasquez and made verbal statements about his anger and wanting to choke someone.

35.     Within approximately a one-week period from the meeting between Ms. Velasquez and Mr. Cox in which Mr. Cox displayed his anger and made statements about choking someone, Ms. Velasquez was approached by the HR Director for the City, who indicated to Ms. Velasquez that Mr. Cox was upset or angry or both and wanted Ms. Velasquez to resign and accept a severance package. Ms. Velasquez had not considered ending her employment with the City or expressed any desire to end her employment with the City at the time the meeting with the HR Director occurred.

36.     Ms. Velasquez advised the HR Director that she had no desire to retire and declined to accept the severance package. At no time from December 2010 forward did Mr. Cox advise Ms. Velasquez why he had targeted her for separation from employment with the City nor did he advise Ms. Velasquez that any of her job duties were being performed in an unsatisfactory way.

37.     In January of 2011, Ms. Velasquez's salary was reduced by approximately $11,200. This reduction was disproportionate to the job responsibilities that Ms. Velasquez was

performing and was not based upon a current salary survey. Reduction was punitive. In April 2011, Defendant Cox met with Ms. Velasquez and presented her with an evaluation for performance in 2010. Ms. Velasquez had prepared a statement to assist Mr. Cox in doing the evaluation, including accomplishments and achievements. Mr. Cox, however, failed to utilize the document prepared by Ms. Velasquez and created his own evaluation. The evaluation given to Ms. Velasquez in 2011 showed Ms. Velasquez as achieving or exceeding expectations in all categories. The overall evaluation was exceeding expectations. No negative information was provided on the evaluation that would have justified the demotion that occurred or the future termination from employment.

38.    I n June of 2011, a new mayor took office in the City of Colorado Springs. Mayor Steve Bach appointed Defendant Cox as the Interim Chief of Staff or Chief of Staff on or about June 20, 2011.

39.    Within seven days, Defendant Cox decided to take action against Ms. Velasquez. On June 27, 2011, Ms. Velasquez was placed on administrative leave and told that she would be terminated from employment within 30 days and was given the opportunity to resign with a severance package.

40.    No reason was given for this drastic adverse employment action directed against Ms. Velasquez in the face-to-face meeting that occurred. Ms. Velasquez was merely told that her services were not needed. There was no claim by Mr. Cox in this meeting that Ms. Velasquez had done anything wrong to warrant a dismissal from employment.

41.    Ms. Velasquez's dismissal from employment came at a time when she was meting and cooperating with members of the District Attorney's Office concerning a criminal

9

investigation directed against a developer for various fiscal crimes related to the U.S. Olympic Committee Project and Grant by the El Pomar Foundation. Ms. Velasquez had met with members of the District Attorney staff and provided information about the financing of the project. The District Attorney's Office had asked for additional information and assistance of Ms. Velasquez. Ms. Velasquez had informed Mr. Cox of the interactions prior to her termination.

42.     In addition, Ms. Velasquez, immediately before her termination, had raised issues and opposed a budgetary plan that would violate the TABOR Amendment requirements. The plan had been submitted under Mr. Cox's direction and control by his subordinate staff. Ms. Velasquez legitimately voiced concerns relative to the apparent violation in order to protect the City. Mr. Cox originally sided with his subordinate staff and ultimately changed his position when the City Attorney's Office verified that Ms. Velasquez's analysis was correct and a violation would occur.

43.     Upon receiving information that her employment would be terminated or was planning to be terminated, Ms. Velasquez arranged a meeting with the Mayor, Mr. Bach. A meeting was held between Ms. Velasquez and Mr. Bach and Ms. Velasquez indicated her desire to remain a City employee and willingness to function under some other chain of command rather than that of Mr. Cox. Ms. Velasquez was prepared to take some other position, even a demoted position, to continue on in employment with the City but the City refused to consider Ms. Velasquez for any other position. Mr. Bach affirmatively stated to Ms. Velasquez that he would support the decision of Mr. Cox and would take no step to remedy the situation. The Mayor claimed the decision was solely that of Mr. Cox.

44.   In this same time period, there were vacant and available positions at which Ms. Velasquez could have been employed, including positions outside of Mr. Cox's chain of command.  Ms. Velasquez was refused all such positions.

45.   On July 29, 2011, Ms. Velasquez was terminated from employment with the City of Colorado Springs.  She was given no severance pay.  Ms. Velasquez, in the 2010 and 2011 time period, was a person over the age of 40 years of age with an expectation of working for many more years.  As a direct and proximate result of the termination of Ms. Velasquez, Ms. Velasquez has lost pay and benefits, including payments and contributions to a retirement program.  The termination of Ms. Velasquez has resulted in substantial economic damage to Ms. Velasquez.  The termination and actions taken against Ms. Velasquez have caused emotional upset and distress.

46.   Ms. Velasquez, after termination, attempted to mitigate her damages by applying for positions in the State of Colorado and outside the State of Colorado.  Approximately 11 months after termination, Ms. Velasquez obtained new employment but at a substantially lesser salary than she received from the City of Colorado Springs.  Ms. Velasquez will suffer future economic loss in addition to the past economic loss that she suffered.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of Equal Protection/14th Amendment 42 U.S.C. § 1983)**

47.   Plaintiff realleges and incorporates by reference paragraphs 1 through 46 above.

48.   The 14th Amendment to the United States Constitution provides for equal protection of the law.  This protection includes equal treatment and equal terms and conditions of

11

employment for females in the employee of government entities.

49.     42 U.S.C. § 1983 makes actionable violations of equal protection where there is job discrimination directed against females based upon gender.

50.     The City of Colorado Springs, in its actions directed against Ms. Velasquez through its appointed officials, including Defendant Cox, violated the provisions of 42 U.S.C. § 1983. The actions include but are not limited to: a) the demotion of Ms. Velasquez in calendar year 2010; b) the pay reduction that was imposed upon Ms. Velasquez that was disproportionate to her jobs and responsibilities; c) the attempt to force Ms. Velasquez from employment in calendar year 2010; d) the attempt to force Ms. Velasquez to voluntarily resign in June of 2011; and e) the termination of Ms. Velasquez in July, 2011.

51.     Further, the City of Colorado Springs discriminated in the terms and conditions of employment with Ms. Velasquez by failing to offer Ms. Velasquez new or additional employment or an alternative chain of command that did not include Mr. Cox.  The refusal to hire was part of a decision to blackball Ms. Velasquez and to prevent her from having further employment with the City of Colorado Springs.  The actions of the City of Colorado Springs were taken under color of law, ordinance, regulation, rule and standard, or were the practice of the City of Colorado Springs to discriminate against female workers.  The policy of discrimination was instituted by Defendant Cox at the time he took his position as Interim City Manager in 2010 and was sanctioned, approved, and otherwise ratified by other City officials, including Mayor Bach in 2011.

52.     Defendant Cox was the ultimate decision maker for the City of Colorado Springs regarding these personnel matters.

53.     The discrimination that was directed against Ms. Velasquez in 2011 was part of a pattern and practice of discrimination that was directed against older female employees.

54.     Older female employees since 2010 have been forced or pushed out of positions. The City has hired and advanced males in a disproportionate manner than compared to females and has additionally compensated males in a disproportionate manner than females.

55.     Studies show that the City of Colorado Springs has under utilized female representation in its workforce such as an ongoing pattern and practice of gender discrimination that has existed for years.

56.     As a direct and proximate result of the discriminatory practices alleged and actions taken against Ms. Velasquez, Ms. Velasquez has been injured as set for above in the complaint.

## SECOND CAUSE OF ACTION
### (Violation of Equal Protection Clause in 42 U.S.C. § 1983 by Defendant Cox)

57.     Plaintiff realleges and incorporates by reference paragraphs 1-56 above.

58.     Defendant Cox made and implemented all the negative job actions set forth above in the proceeding cause of action.

59.     Defendant Cox at all times acted with an improper and discriminatory gender animus directed against Terri Velasquez. Defendant Cox's gender animus included gender stereo typing of females that females had to be subservient.

60.     Defendant Cox exhibited such gender stereo typing at prior times as Fire Chief and adopted a long standing gender bias while in the fire department. Defendant Cox acted with improper and discriminatory gender animus in taking the actions he took directed against Terri

Velasquez, which actions included the adverse employment action set forth above.  Defendant

Cox, at all times, acted under color of law, statute, rule or regulation and standard and practice so

as to make him liable for a violation of 42 U.S.C. § 1983.  Defendant Cox denied to the Plaintiff

equal terms and conditions of employment and benefits of employment in the actions that he

took.  Defendant Cox acted with a wrongful gender animus which caused him to take the actions

he took.  This illegal gender animus may have been mixed with other illegal and improper

animus and was not taken for a legitimate bonafide business reason.

61.     Defendant Cox caused the injuries complained of by Ms. Velasquez in this

Complaint including reduction in position, pay loss, attempts to remove her from employment or

threats to remove her from employment, and the actual termination of Ms. Velasquez.  The

wrongful actions of Mr. Cox in violation of 42 U.S.C. § 1983 have caused the injuries referenced

by Ms. Velasquez above.

### THIRD CAUSE OF ACTION
### (Age Discrimination)

62.     Plaintiff realleges and incorporates by reference paragraphs 1-61 above.

63.      29 U.S.C. §623 prohibits age discrimination by an employer and makes it

unlawful for the employer to discharge or otherwise discriminate against an individual with

respect to his or her compensation terms, conditions, or privileges or employment because of

such individuals age.  Further, it is illegal for an employer to limit, segregate, or classify

employees in any way which would deprive or tend to deprive the employee of equal

employment opportunities or otherwise adversely effect status as an employee because of an

individual's age.  Further, it is illegal to reduce an employees wage based on age.

64.     The City of Colorado Springs, in 2007, instituted a policy or practice of getting rid of its older workers, including forcing older workers out of employment or terminating older workers.

65.     This policy or practice was or may have been coupled with intentional gender discrimination practices which particularly targeted older female workers.

66.     Since 2010, older workers, particularly older female workers, have been terminated from City employment, forced out of City employment, or removed from City employment through various means and methods.  Frequently, these older workers have been replaced by males who are younger.

67.     Younger males and younger workers in general have been given more opportunities for employment and advancement in employment than older workers.  Older workers are continually threatened with discharge or removal from position and this pattern continues.  The actions directed against Ms. Velasquez are part of a pattern and practice of removing older workers from employment.  As a direct and proximate result of the wrongful age discrimination that has been practiced by the City, Ms. Velasquez was terminated and not offered alternative employment by the City.

68.     Further, Ms. Velasquez was not paid a proportionate amount of salary after her demotion in 2010 for the position that she occupied.  Defendant City of Colorado Springs has violated the provisions of the Age Discrimination Act in its actions directed against Ms. Velasquez.  Plaintiff, Terri Velasquez, has been damaged as set forth above in this Complaint.

**FOURTH CAUSE OF ACTION**
**(Wrongful discharge and retaliation and violation of public policy)**

69.     Plaintiff realleges and incorporates by reference paragraphs 1-68 above.

70.     The City of Colorado Springs wrongfully, willfully, and intentionally terminated Terri Velasquez for protected acts, including reporting fiscal improprieties, attempting to ascertain other fiscal improprieties, and cooperation with the District Attorneys in a criminal investigation relating to misuse of funds and inappropriate fiscal controls by the City of Colorado Springs.

71.     The following actions were taken in retaliation for Ms. Velasquez's protected activity: a) the attempt in December 2010 to force Ms. Velasquez from employment; b) penal wage reduction of approximately $11,200 that was imposed in January 2011; c) attempting to force Ms. Velasquez out of employment in 2011; d) the termination of Ms. Velasquez's employment in 2011; and e) the refusal to employ Ms. Velasquez in any position at the City and a blackballing of Ms. Velasquez from employment. The actions of the City through its representatives constitutes a violation of public policy that encourages employees to report fiscal improprieties and improper actions by governmental officials. Ms. Velasquez at all times acted with a pure heart and proper intent in making reports and cooperating with law enforcement and opposing violations of the TABOR Amendment and taking other actions that would protect the City from potential liabilities and harm. The termination of Ms. Velasquez in retaliation for the actions that she took to protect the City was a violation of public policy and constitutes an illegal termination under law. The illegal termination of Ms. Velasquez violates an implied contractual provision within the employment relationship with Ms. Velasquez that exists through operation of the law. As a direct and proximate result of the wrongful actions taken against Ms. Velasquez by the City of Colorado Springs, Ms. Velasquez has been injured as set forth above.

## FIFTH CAUSE OF ACTION
### (Tortious interference with contract)

72.     Plaintiff realleges and incorporates by reference paragraphs 1-71 above.

73.     The actions of Defendant Cox in causing a pay reduction of Ms. Velasquez below what was routine and recognized and in terminating the employment of Ms. Velasquez constitutes a tortious interference with contract between Ms. Velasquez and the City of Colorado Springs.

74.     This tortious interference with contract is done with an illegal motivation including but not limited to violations of State and Federal law and because Ms. Velasquez's reporting of fiscal improprieties, including the overpayment to Mr. Cox and other members of the fire department. The actions taken by Mr. Cox were willful, malicious, and taken with reckless disregard of Ms. Velasquez's rights.

75.     The actions were taken with express intent to interfere with Ms. Velasquez's employment and cause Ms. Velasquez harm and injury.

76.     Defendant Cox is personally liable for the injuries caused Ms. Velasquez from the intentional interference with contract, including wage loss and benefit loss.

### RELIEF REQUESTED

Plaintiff requests the Court enter the following relief for the Plaintiff and against the Defendants

1.     Award Plaintiff back pay and benefit loss.

2.     Award Plaintiff front pay and benefit loss.

3.     Award Plaintiff damages for emotional upset and distress, embarrassment, and

other damages allowable under law.

4.    Award Plaintiff attorneys fees and costs pursuant to federal statute including 42

U.S.C. §1988 and the age discrimination statutes.

5.    Award Plaintiff interest from the earliest possible date.

6.    Enter such other relief as is just and proper.

7.    Plaintiff demands a trial by jury on all issues triable by a jury.

DATED this 9th day of July, 2012.


                                        FRANK & FINGER, P.C.


                                        s/William S. Finger
                                        William S. Finger, #7224
                                        Melissa C. Collins, #34285
                                        Frank & Finger, P.C.
                                        P.O. Box 1477
                                        Evergreen, CO 80437-1477
                                        Telephone (303) 674-6955
                                        Facsimile (303) 674-6684
                                        E-mail: fandfpc@aol.com

Plaintiff's address:

672 Golden Eagle Drive
Colorado Springs, Colorado 80916